STATE of Wisconsin, Plaintiff-Respondent,

v.

Allen Briggs JOHNSON, Defendant-Appellant.†

Court of Appeals

*No. 89-2108-CR. Submitted on briefs July 18, 1990.—Decided
September 20, 1990.*

(Also reported in 463 N.W.2d 352.)

† Petition to review denied.

For the defendant-appellant the cause was submitted on the briefs of *Mark F. Borns* of *Borns, Macaulay & Jacobson* of Madison.

For the plaintiff-respondent the cause was submitted on the brief of *Donald J. Hanaway,* attorney general, and *Paul Lundsten,* assistant attorney general.

Before Eich, C.J., Dykman and Sundby, JJ.

EICH, C.J.   Allen Johnson appeals from a judgment of conviction and sentence and an order denying his motion for sentence reduction.. He was convicted of three counts of second-degree sexual assault and two counts of bail jumping. He received consecutive terms of ten, ten, and five years for the sexual assaults and probation for bail jumping.

Johnson raises several issues, all related to his sentence: (1) whether the trial court may consider the victim's wishes in framing a sentence; (2) if so, whether the victim's change of mind constitutes a new factor requiring resentencing; (3) whether the trial court based its sentence on erroneous information; (4) whether the court improperly considered offenses for which Johnson

was not charged; (5) whether the court erred by failing to explain why it did not adopt the sentencing recommendation in the presentence report and by failing to explain its deviation from the experimental sentencing guidelines; and (6) whether Johnson is entitled to be resentenced because the presentence report incorrectly reported the number of his prior convictions. We resolve all issues against Johnson and affirm.

Johnson was initially charged with seven counts of second-degree sexual assault involving three young boys. He entered pleas of no contest to three counts, two involving M.H. and one involving W.L., both of whom were under the age of sixteen when the assaults occurred. He also pleaded no contest to two counts of bail jumping resulting from his attempts to contact one of the victims, W.L., in violation of the conditions of his bond. In exchange for his pleas, the prosecutor dismissed the other charges, although they were "read in" for sentencing purposes.

Our review of sentencing decisions is limited to determining whether the trial court abused its discretion. *State v. Harris,* 119 Wis. 2d 612, 622, 350 N.W.2d 633, 638 (1984). "[S]uch questions will be treated in light of a strong policy against interference with the discretion of the trial court in passing sentence." *Elias v. State,* 93 Wis. 2d 278, 281, 286 N.W.2d 559, 560 (1980) (citations omitted). The trial court is presumed to have "acted reasonably . . . [unless] the defendant [can] show some unreasonable or unjustified basis . . . for the sentence . . .." *Harris* at 622–23, 350 N.W.2d at 638–639.

Johnson argues first that the trial court abused its discretion when it considered the victims' "wishes" as to the length of his sentence. He points to a comment in the presentence report that W.L. had told the investiga-

tor that he (Johnson) should receive "three life sentences" for his crimes.

Johnson offers no authority for the proposition he advances. Instead, he argues that because cases such as *State v. Jones,* 151 Wis. 2d 488, 495, 444 N.W.2d 760, 763 (Ct. App. 1989), which refer to and compile permissible sentencing factors, do not mention "victim wishes" in their lists, it must be an improper factor. We disagree.

It is well established that in sentencing a defendant the court should consider the gravity of the offense, the need for protection of the public and the character of the offender. *Elias,* 93 Wis. 2d at 284, 286 N.W.2d at 561. In its discretion, the court may also consider a variety of other factors. *See Jones,* 151 Wis. 2d at 495, 444 N.W.2d at 763, for an illustrative list of relevant factors.

Neither *Jones* nor any of the other cases discussing factors which may be considered in sentencing[1] purport to set forth exclusive or preemptive listings, and we have no doubt that trial courts may consider the recommendations of interested parties in framing a sentence. Indeed, trial courts are routinely provided with sentencing "recommendations" from prosecutors, probation and parole agents and others who prepare presentence reports—including persons privately retained by defendants to do so—as well as expert witnesses such as psychiatrists and psychologists. Nor is it uncommon for a defendant's friends and relatives to appear and testify at the sentencing hearing, often urging the court to impose a light or nonincarcerative sentence.

---

[1]See, for example, *McCleary v. State,* 49 Wis. 2d 263, 276, 182 N.W.2d 512, 519 (1971); *State v. Harris,* 119 Wis. 2d 612, 623–24, 350 N.W.2d 633, 639 (1984).

■

We agree with the state that trial courts are not rubber stamps. They do not blindly accept or adopt sentencing recommendations from any particular source. They accept recommendations only if they can independently conclude that the recommended sentence is appropriate in light of the acknowledged goals of sentencing as applied to the facts of the case.

We agree, too, that the fact that victims may not be objective in the matter is of little import. If bias or personal interest were a ground for rejecting sentencing arguments and recommendations, few defendants (or members of their families) or defense attorneys would be competent to comment.

■

We believe that consideration of the comments—even the "wishes"—of a victim is within the sentencing court's prerogatives. Courts are entitled—even encouraged—to consider the rights and interests of the public in imposing a sentence in a particular case. *Jones,* 151 Wis. 2d at 495, 444 N.W.2d at 763. Indeed, we held in *Jones* that consideration of the victim's "rehabilitative needs" was a "logical extension" of the universally accepted practice of considering the rights and interests of the public in sentencing offenders. *Id.* at 496, 444 N.W.2d at 764.[2]

---

[2]Although not specifically discussed in the majority opinion in *Jones,* sec. 950.04(2m), Stats., bolsters our conclusion that the trial court did not err in this case. Section 950.04 is entitled "Basic bill of rights for victims and witnesses," and among those rights is the right "[t]o have the court provided with information pertaining to the economic, physical and psychological effect of the crime upon the victim of a felony and have the information considered by the court."

We reach a similar conclusion here. A sentencing court does not abuse its discretion when it considers statements and recommendations from victims.[3]

Johnson next argues that even if the victim's statements were properly considered, the court erred in denying his request for resentencing in light of the victim's change of heart since the original sentencing. He asserts that W.L., who had, as we have indicated, told a presentence investigator that he felt Johnson should be severely punished, now believes he should receive only counseling. Johnson contends this is a "new factor" entitling him to be resentenced.

Whether a fact is a new factor warranting resentencing is a question of law. *State v. Hegwood,* 113 Wis. 2d 544, 547, 335 N.W.2d 399, 401 (1983). A new factor is one which is "highly relevant to the imposition of sentence, but not known to the trial judge at the time of the original sentencing, either because it was not then in existence or because, even though it was then in existence, it was unknowingly overlooked by all of the parties." *Rosado v. State,* 70 Wis. 2d 280, 288, 234 N.W.2d 69, 73 (1975). The new factor must be an event or development that "frustrates the purpose of the original sentencing." *State v. Michels,* 150 Wis. 2d 94, 97, 441 N.W.2d 278, 279 (Ct. App. 1989).

---

[3]Obviously, a court can abuse its sentencing discretion "if [it] fail[s] to state . . . the factors influencing the sentence, or if it g[ives] too much weight to one factor in the face of other contravening factors," or perhaps in some other manner. *Jones,* 151 Wis. 2d at 495, 444 N.W.2d at 763. There is no suggestion in this record, however, that any such abuse occurred.

Among the reasons advanced by the trial court for imposing the sentence were the "rights of the public to punish for punishment's sake when necessary," the court's "obligation to deter other [child molesters]," the fact that the victims were "severely emotionally damaged," the "substantial contacts the defendant had [with his victims]" and the fact that "he . . . encouraged other children to engage in sexual activity while he watched them." These are all appropriate factors for consideration by the court and Johnson has not persuaded us that the alleged changed opinion of one victim frustrates the purpose of the original sentencing. Moreover, on this record we do not believe W.L.'s brief, generally-stated opinion, though considered by the court, was "highly relevant to the imposition of sentence."

We also note the supreme court's comment in *State v. Macemon,* 113 Wis. 2d 662, 668, 335 N.W.2d 402, 406 (1983) (citation omitted), that a court "should not reduce a sentence on 'reflection' alone or simply because it has thought the matter over and has second thoughts. It must base its modification on 'new factors' brought to its attention." We agree with the state's comment that "if a change of heart by the sentencing court itself is not a new factor supporting resentencing, it can hardly be argued that resentencing is required every time a victim [or a member of a defendant's family, or anyone else addressing the court at sentencing] has a change of heart."[4]

---

[4]Finally, we note that Johnson's "evidence" that the victim had a change of heart is, to be charitable, skimpy and suspect. It consists solely of an affidavit from his (Johnson's) own mother and an unsworn statement purported to have been taken from W.L. by Johnson's father. We again agree with the state that this

Johnson next asserts that the trial court abused its discretion when it "based its sentence upon erroneous information." He refers to the court's statement that it was aware of the severe emotional damage and the "suffering" incurred by the victims. He contends that the information was erroneous because one of the victims was not emotionally damaged.

Defendants have a due process right to be sentenced on the basis of accurate information. *United States v. Tucker,* 404 U.S. 443 (1972). However, a defendant who requests resentencing based on inaccurate information must show both that the information was inaccurate, and that the court actually relied on the inaccurate information in the sentencing. *United States ex rel. Welch v. Lane,* 738 F.2d 863, 865 (7th Cir. 1984).

The record supports the trial court's statement that the victims suffered emotional damage. M.H., with whom Johnson had as many as six hundred episodes of sexual contact over a two-year period, wrote a letter to the court explaining the damage he sustained from the assaults:

> I don't know where to begin telling you how this crime has affected myself and my family . . . .. I have suffered from low self-esteem, tremendous guilt, haunted days, and sleepless nights . . . .. I didn't like myself very much . . . .. I was so confused that I even questioned my sexual orientation . . . .. I felt so unsafe and so unclean . . . .. I now see many poor career choices I have made due to my lack of self-confidence because of the assaults.

---

is hardly the type of clear and convincing evidence required to gain a resentencing on "new factor" grounds.

The other victim, W.L., also had a large number of sexual contacts with Johnson over a four-year period. He was forced to change schools to avoid harassment after Johnson's assaultive behavior was discovered and his therapist told the presentence investigator that W.L. suffered "significant damage" from the incidents. On this record, Johnson has failed to carry his burden of establishing that the trial court improperly relied on erroneous information.

Johnson next asserts that the court improperly considered criminal activity for which he was not charged. We reject this contention as well. The supreme court has expressly held that uncharged offenses may be considered by a sentencing court because they indicate whether the crime was an isolated act or a pattern of conduct. *State v. McQuay,* 154 Wis. 2d 116, 126, 452 N.W.2d 377, 381 (1990); *Elias,* 93 Wis. 2d at 284, 286 N.W.2d at 562. As the trial court noted, the uncharged assaults indicate a pattern of sexually victimizing young boys.

Equally unpersuasive is Johnson's argument that the trial court erred when it failed to explain why it deviated from the recommendation in the presentence report. Such a recommendation may be a relevant factor in determining type and length of sentence, but it is not binding on the sentencing court. *Ocanas v. State,* 70 Wis. 2d 179, 188, 233 N.W.2d 457, 462 (1975). As long as "[t]he trial judge [exercises] discretion [and] sentence[s] within the permissible range set by statute," *id.* at 185, 233 N.W.2d at 461, the court need not explain why its sentence differs from any particular recommendation.

In a similar vein—and with similar results—Johnson contends that it was error for the trial

469

court to deviate from the experimental sentencing guidelines without explaining the reasons therefor. Section 973.012, Stats., specifically provides that "[t]here shall be no right to appeal on the basis of the trial court's decision to render a sentence that does not fall within the sentencing guidelines." Thus, even where a court departs from statutorily-mandated guidelines, "[its] compliance or noncompliance with [the guidelines] is not an appellate issue . . . because the Court of Appeals has no jurisdiction" in the matter. *State v. Halbert,* 147 Wis. 2d 123, 132, 432 N.W.2d 633, 637 (Ct. App. 1988).

Finally, Johnson asserts that the presentence report incorrectly stated that he had five prior felony convictions for indecent liberties with a minor, when, in reality, his record included only three counts of contributing to the delinquency of a minor (a misdemeanor), one felony count of indecent behavior with a child, and one felony count of enticing a child for immoral purposes.

Johnson's attorney reviewed the presentence report prior to sentencing and did not note any objection to it or point the court to any purported inaccuracies. In a similar situation, the supreme court held that where the facts stated in a presentence report "were not challenged or disputed by the defendant at the time of sentencing, we find no abuse of discretion by the sentencing judge [in considering them]." *Handel v. State,* 74 Wis. 2d 699, 704, 247 N.W.2d 711, 714 (1976).

In addition, we note that while Johnson's presentence report does note "5 counts" of indecent liberties with minors, the narrative portion of the report states that he "was charged with five counts," not that he had been convicted of them. We note, too, the trial court, in its sentencing remarks, referred to a single conviction for indecent liberties, noting that it had been "a

five-count complaint." Johnson has failed to demonstrate either that the report was inaccurate or that the trial court relied on inaccurate information in sentencing him.

*By the Court.*—Judgment and order affirmed.

SUNDBY, J. *(concurring).* I concur in the majority's opinion in all respects except I do not believe we should decide that the victim's recommendation as to the appropriate sentence may be considered by the sentencing court. There is nothing in the record of the sentencing hearing to support Johnson's argument that the trial court gave any weight to the victim's wishes or opinions as to the appropriate sentence for the defendant. The trial court simply stated that it was aware of the presentence report in which the preparer described how the victims felt about the matter.

When the sentencing hearing record is considered in its entirety, it is evident that the trial court was considering the contents of the pre-sentence report insofar as that report related how the victims were severely emotionally damaged. There is no evidence that the trial court considered any of the victims' views as to the appropriate sentence for Johnson. Accordingly, when we approve for trial courts' consideration the "wishes" of a victim as to the appropriate sentence, we prematurely place our imprimatur on a practice not followed in this case.

Further, before we approve for trial courts' sentencing discretion the wishes of a victim as to the appropriate sentence, we should require that the issue be thoroughly briefed. First, we should inquire whether the victim's opinion or wish as to the appropriate sentence may properly be included in a presentence investigation report under sec. 972.15(2m), Stats., which provides:

> The person preparing the presentence investigation report shall attempt to contact the victim *to determine the economic, physical and psychological effect of the crime on the victim.* The person preparing the report may ask any appropriate person for information. This subsection does not preclude the person who prepares the report from including any information for the court concerning the impact of a crime on the victim. [Emphasis added.]

Sections 950.04(2m) and 950.05(1)(dm), Stats., which also deal with victim rights, are concerned with the impact of the offense upon the victim and not with the opinion or wish of the victim as to the appropriate sentence.

Second, we should be concerned as to the constitutionality of the use of victim impact statements generally and particularly those which can be considered as invading the province of the trial court. At least thirty-six states permit the use of victim impact statements in some context. *Booth v. Maryland,* 482 U.S. 496, 509 n.12 (1987)[1] (citing *National Organization for Victim Assistance, Victim Rights and Services:* A Legislative Directory, 32–33 (1985) (chart); and McLeod, *Victim Participation at Sentencing,* 22 Crim. L. Bull. 501, 507 and n.22 (1986)). Congress has also provided for victim participation in federal criminal cases. *See* Fed. R. Crim. P. 32(c)(2)C. In *Booth,* the supreme court expressed no

[1]There is little consensus as to what should be included in a victim impact statement. McLeod, *Victim Participation at Sentencing,* 22 Crim. L. Bull. at 510–11. Some states not only authorize an objective assessment of crime impact but invite recommendations for disposition of the case. *Id.* at 511; *see* Minn. Stat. Ann. sec. 609.115, subds. 1b and 1c (allowed victim to recommend disposition of case but was repealed by 1987 Minn. Laws, ch. 331, sec. 13).

opinion as to the use of victim impact statements in non-capital cases. The Court did, however, hold invalid a Maryland statute requiring consideration by the jury of a victim impact statement at the sentencing phase of a capital murder trial. The Court held that the statute violated the eighth amendment.

Third, if we allow victims to recommend sentences, we raise the specter of a victim challenging a sentence if the judge does not consider the victim's recommendation. *See McLeod,* 22 Crim. L. Bull. at 517. Section 950.04, Stats., provides in part: "*Victims* . . . of crimes . . . *have the following rights:* . . . (2m) *To* have the court provided with information pertaining to the economic, physical and psychological effect of the crime upon the victim of a felony and *have the information considered by the court.*" (Emphasis added.) This language is mandatory.

If the trial court's consideration is limited to the effects upon the victims, as I believe the record in this case requires, I see no error. The defendant waived any objection to the trial court's considering the impact of his acts upon the victims. He advised the court: "I feel very badly about what I have done to these people. I've hurt not only them but their families and friends and my family and friends. I hope that they can get on with their lives, lead productive lives."