STATE of Wisconsin,
Plaintiff-Respondent,

v.

James I. MONTROY,
Defendant-Appellant.†

Court of Appeals

*Nos. 2004AP3249–CR, 2004AP3250–CR. Submitted on briefs
June 20, 2005.—Decided August 30, 2005.*

2005 WI App 230

(Also reported in 706 N.W.2d 145.)

† Petition for review denied 11-11-05.

431

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Jay E. Heit* of *Herrick & Hart, S.C.*, Eau Claire.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Peggy A. Lautenschlager*, attorney general, and *Jeffrey J. Kassel*, assistant attorney general, Madison.

Before Cane, C.J., Hoover, P.J., and Peterson, J.

¶ 1. PETERSON, J. James Montroy appeals judgments of conviction for burglary and cocaine possession with intent to deliver and an order denying his postconviction motion for sentence modification. Montroy argues the circuit court erred by: (1) concluding he was not entitled to a new presentence investigation report and sentencing hearing; (2) determining he was not eligible for the Earned Release Program; and (3) considering aggravating factors at sentencing that were not proven beyond a reasonable doubt. We disagree and affirm the judgments and order.

## BACKGROUND

¶ 2. Montroy faced five charges in five different Pepin County cases. On August 19, 2003, he pled guilty to two of those charges, burglary and cocaine possession with intent to deliver. The repeater allegations on those charges were dismissed and the remaining three charges were dismissed and read in for sentencing. The presentence investigation report (PSI) erroneously included the repeater allegations. The court ordered a second PSI.

¶ 3. At the February 3, 2004, sentencing hearing, Montroy objected to information contained in the second PSI. Although the repeater allegations had been removed from certain sections, the preparer's sentencing recommendation still contained that erroneous information. The second PSI also incorrectly stated that Montroy had a prior first-degree sexual assault conviction. The court ordered a third PSI and continued the sentencing hearing.

¶ 4. When the sentencing hearing resumed on April 5, 2004, Montroy objected to the third PSI. The incorrect sexual assault conviction was still listed and the third PSI erroneously indicated that Montroy had pending bail jumping charges. Montroy requested a new PSI be prepared. The court denied Montroy's request, instead striking and disregarding the incorrect information. It sentenced Montroy to six years of confinement and four years of extended supervision on the burglary charge and a consecutive sentence of two years' confinement and four years' extended supervision on the drug charge. It also determined he was ineligible for the Challenge Incarceration and Earned Release programs because of his many drug-related convictions.

¶ 5. At a May 17, 2004, motion hearing, Montroy's counsel[1] claimed that the court had not made a determination on Montroy's Earned Release eligibility. Montroy's counsel directed the court to the sentencing recommendation in the PSI, which indicated Montroy was ineligible based on his past sexual assault conviction. The court adopted that recommendation.

¶ 6. On August 18, 2004, Montroy moved for sentence modification. He argued that he was preju-

[1] Montroy did not appear personally at the hearing.

diced by inaccuracies in the third PSI, that the court improperly determined he was ineligible for the Earned Release Program based on a sexual assault conviction, and that the court improperly considered aggravating factors that were not supported by sufficient evidence. The court denied Montroy's motion.

## DISCUSSION

### *Inaccurate Information in PSI*

¶ 7.    Montroy argues he is entitled to a new PSI and a new sentencing hearing because the third PSI contained inaccurate information. A defendant has a due process right to be sentenced based on accurate information. *State v. Johnson*, 158 Wis. 2d 458, 468, 463 N.W.2d 352 (Ct. App. 1990). Whether a defendant has been denied this due process right is a question of constitutional fact. *State v. Groth*, 2002 WI App 299, ¶ 21, 258 Wis. 2d 889, 655 N.W.2d 163. We accept the circuit court's findings of fact unless they are clearly erroneous. Wis. Stat. § 805.17(2).[2] However, whether the facts amount to a constitutional violation is a question of law that we review independently. *State v. Littrup*, 164 Wis. 2d 120, 126, 473 N.W.2d 164 (Ct. App. 1991).

¶ 8.    When a defendant seeks resentencing because the court relied on inaccurate information, the defendant must establish by clear and convincing evidence that the information was inaccurate and that the court relied on it to the defendant's detriment. *Id.* at

----

[2] All references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted.

132. On appeal, Montroy contends the PSI contained the following inaccurate information: (1) it incorrectly stated he was convicted of first-degree sexual assault; (2) it incorrectly stated he had a pending bail jumping charge; and (3) it included eight juvenile adjudications, when only six should have been included. Montroy argues the court relied on this inaccurate information to his detriment.

¶ 9. The State concedes the third PSI contained inaccurate information. However, it argues that Montroy has not met his burden of proof that the court relied on that inaccurate information when it sentenced him. It contends the court properly struck the sexual assault conviction and pending bail jumping charge from the PSI and did not rely on them when sentencing Montroy. It also argues that even though only six juvenile adjudications should have been listed in the PSI, the court could properly consider all eight at sentencing and, further, that the difference between six and eight juvenile adjudications, in light of Montroy's extensive adult record, was not significant enough to prejudice Montroy.

¶ 10. When Montroy raised the first two errors at the sentencing hearing, the court responded:

Well, the remedy is to strike [the incorrect information] from the Pre-Sentence Investigation. And that is any reference to the bailjumping is stricken.

And, also, the first-degree sexual assault of a child conviction is stricken from it and will not be considered in the Court's sentencing.

The Court doesn't just swallow the Department's recommendations anyway on sentencing, especially in serious cases such as these with the long-term criminal activity of this individual, even striking the two cases.

Montroy argues that even though the court claimed it was not relying on the inaccurate information, he can still demonstrate detrimental reliance through other statements or the sentence itself, citing *State v. Anderson*, 222 Wis. 2d 403, 409–10, 588 N.W.2d 75 (Ct. App. 1998).[3] In *Anderson*, we concluded the sentencing court had relied on inaccurate information to Anderson's detriment. We were unpersuaded by the sentencing court's after-the-fact comments at a postconviction motion hearing that it had not relied on inaccurate information because those comments were inconsistent with the court's comments at the sentencing hearing itself. *Id.* at 410.

¶ 11.  The problem with Montroy's reliance on *Anderson* is that he fails to offer convincing evidence that, contrary to the court's disclaimer, the court actually relied on the inaccurate information when it sentenced him. Montroy contends that the court's statement, "the long string of antisocial criminal activity and manipulation of the system has gone on too long," demonstrates that it improperly relied on the PSI's inaccurate information. However, Montroy's accurate criminal record, which does not include the sexual assault conviction or pending bail jumping charges, is lengthy. The court need not have relied on inaccurate information to reach that conclusion. Therefore, the court's reference to Montroy's lengthy criminal history lends no support to his assertion that the court relied on inaccurate information.

---

[3] Montroy does not challenge the court's authority to strike inaccurate information from a PSI. *See State v. Bush*, 185 Wis. 2d 716, 724 n.1, 519 N.W.2d 645 (Ct. App. 1994). Rather, he argues that that remedy was inadequate here.

¶ 12. Montroy also asserts that the sentence imposed demonstrates the court relied on inaccurate information. Because the sentence essentially adopted the PSI's sentencing recommendation,[4] which was based on inaccurate information, Montroy reasons that the court must have also relied on the inaccurate information. However, as the court here acknowledged on the record, a sentencing court is not bound by the PSI's sentencing recommendation. That the court ultimately reached a sentence in the same range as that recommended by the PSI, without more, does not demonstrate that the court relied on the PSI's inaccuracies. Montroy has not provided evidence that, despite the court's statement that it would not rely on the inaccurate information, it nonetheless did so when it sentenced him. Accordingly, Montroy's reliance on *Anderson* is misplaced.

■

¶ 13. Montroy also argues that the PSI improperly included two of his juvenile adjudications, when there was no evidence that he was represented by counsel.[5] The State concedes that the Department of

---

[4] The PSI recommendation was five to seven years' confinement and three to four years' extended supervision on the burglary charge and three to four years' confinement and three to four years' extended supervision on the drug charge, to run concurrently. The court imposed six years' confinement and four years' extended supervision on the burglary charge and two years' confinement and four years' extended supervision on the drug charge, to run consecutively.

[5] Montroy did not ask the court to correct the improper references to his juvenile history at the sentencing hearing. Instead, he raised them as a basis for his request for resentencing.

Corrections guidelines mandate that unrepresented juvenile adjudications should not be included in a PSI. However, the State argues, and we agree, that regardless of whether the adjudications should have appeared in the PSI, the sentencing court could properly consider all of Montroy's juvenile adjudications at sentencing. *See Triplett v. State*, 51 Wis. 2d 549, 551–52, 187 N.W.2d 318 (1971). Additionally, Montroy's extensive adult criminal history was a sufficient basis for the court's conclusion that he was an habitual criminal, and the deletion of two juvenile adjudications would not have likely changed the court's conclusions on sentencing. Accordingly, Montroy has not met his burden to show prejudice from the two juvenile adjudications improperly included in the PSI.

¶ 14.    Montroy also argues a new PSI is necessary because the inaccurate information will continue to prejudice him in the future. He cites WIS. ADMIN. CODE § DOC 328.27 (Nov. 2002) for examples of the various uses for a PSI beyond sentencing. However, WIS. STAT. § 973.08(2) requires that the transcript of Montroy's sentencing hearing be part of his record.[6] Accordingly, Montroy's record will include the court's comments striking the improper references. Further, the uses the Department of Corrections might have for a PSI is not a basis to order a new PSI. *See State v. Bush*, 185 Wis. 2d 716, 723–24, 519 N.W.2d 645 (Ct. App. 1994). Any speculative future prejudice Montroy may suffer from

---

[6] The relevant portion of WIS. STAT. § 973.08, entitled "Records accompanying prisoner," provides:

(2) The transcript of any portion of the proceedings relating to the prisoner's sentencing shall be filed at the institution within 120 days from the date sentence is imposed.

the inaccuracies in his PSI does not compel us to overturn his sentence or order a new PSI.

## *Earned Release Program Eligibility*

¶ 15.   Montroy argues the circuit court erred when it determined he was not eligible for the Earned Release Program. *See* Wis. Stat. § 302.05(3). Defendants convicted of certain crimes are per se ineligible for the program.[7] However, for all other defendants sentenced under Truth-in-Sentencing, the sentencing court must, as part of its sentencing discretion, determine whether a defendant is eligible for this program. *See* Wis. Stat. § 973.01(3g).[8] We review a court's exercise of sentencing discretion to determine whether it erroneously exercised that discretion. *State v. Echols*, 175 Wis. 2d 653, 681, 499 N.W.2d 631 (1993).

¶ 16.   Montroy argues the court improperly determined he was ineligible due to a sexual assault conviction. At the May 17, 2004, motion hearing, the court stated:

---

[7] Wisconsin Stat. § 302.05(3)(a)1. specifies that eligible inmates are those "incarcerated regarding a violation other than a crime specified in ch. 940 or s. 948.02, 948.025, 948.03, 948.05, 948.055, 948.06, 948.07, 948.075, 948.08, or 948.095."

[8] Wisconsin Stat. § 973.01 provides:

(3g) Earned release program eligibility. When imposing a bifurcated sentence under this section on a person convicted of a crime other than a crime specified in ch. 940 or s. 948.02, 948.025, 948.03, 948.05, 948.055, 948.06, 948.07, 948.075, 948.08, or 948.095, the court shall, as part of the exercise of its sentencing discretion, decide whether the person being sentenced is eligible or ineligible to participate in the earned release program under s. 302.05(3) during the term of confinement in prison portion of the bifurcated sentence.

440

According to the report of the Department of Corrections, in the last sentence, "Mr. Montroy is not eligible for the Challenge Incarceration Program or the Earned Release Program due to his past sexual conviction."

Montroy argues the only sexual assault conviction that would disqualify him from eligibility was the inaccurately-listed first-degree sexual assault conviction. Thus, he contends, the court's determination that he was ineligible for the program was clearly erroneous.

¶ 17.  The State concedes that Montroy does not have any convictions that render him per se ineligible for the program. However, it argues, the court corrected the error and properly exercised its discretion at the December 6, 2004, hearing. At that time, the prosecutor agreed that Montroy had no sex-related convictions that barred him from the program, but then reminded the court that it was within its discretion to determine Montroy's eligibility. The court stated:

Well, of course, the Court is very familiar with Mr. Montroy. He's had a long criminal record since he's been here in this state. And those are the primary considerations that the Court took into consideration.

He is incorrigible. I believe he is where he belongs. And he should stay there for as long as the Court has sentenced him.

The State argues that the court's statements here demonstrate that it exercised its discretion to deem Montroy ineligible.

¶ 18.  Montroy replies that the court's statement was not a sufficiently specific determination of his eligibility for the program. He contends that "[t]he only finding the trial court made as to eligibility was that Mr. Montroy was not eligible because of his sexual conviction." We disagree. While the court did not specifically

state that Montroy was ineligible for the program, it is apparent that the court did not think Montroy should be able to decrease his term of imprisonment. *See State v. Gallion*, 2004 WI 42, ¶ 49, 270 Wis. 2d 535, 678 N.W.2d 197 (exercise of sentencing discretion is not a matter of uttering "magic words").

¶ 19. Additionally, at the April 5, 2004, sentencing hearing, the court did, in fact, make a ruling on Montroy's eligibility for the program. At that time, the court stated, "[Y]ou do not qualify for Challenge Incarceration or for Earned Release credit because of the many convictions on your drug involvement." While this ruling is cited in Montroy's statement of facts, it is ignored in his argument. None of the inaccurate information he challenges on appeal relates to his past drug offenses or history of drug problems. Accordingly, because the court properly exercised its discretion by denying Montroy's Earned Release Program eligibility, Montroy's arguments fail.

### Consideration of Aggravating Factors

¶ 20. Montroy argues that the court erred by considering aggravating factors at sentencing that were not proven beyond a reasonable doubt, in violation of his due process rights. He contends the court's use of the Wisconsin Sentencing Guidelines Worksheet in calculating his sentence and consideration of facts not found by the jury, such as the type of dwelling burglarized and whether children were present, violate the rules articulated in *Blakely v. Washington*, 542 U.S. 296, 124 S. Ct. 2531 (2004), and *United States v. Booker*, 125 S. Ct. 738 (2005).

¶ 21. *Blakely* invalidated Washington's sentencing scheme that allowed courts to increase a sentence

442

beyond the standard range if they found "substantial and compelling reasons" to do so. *Blakely*, 124 S. Ct. at 2535. The *Blakely* Court applied the rule that, " 'Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.' " *Id.* at 2536 (quoting *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000)). The Court held that the "statutory maximum" is "the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." *Blakely*, 124 S. Ct. at 2537. Because the sentencing court increased Blakely's sentence beyond the statutory maximum based on its own factual findings, the sentence violated Blakely's Sixth Amendment rights.

¶ 22. The *Blakely* holding was applied to the federal mandatory sentencing guidelines in *Booker*. In *Booker*, the Court concluded that because the guidelines were mandatory and increased sentences based on additional facts found by a preponderance of the evidence, those guidelines were unconstitutional. *Booker*, 125 S. Ct. at 746.

¶ 23. Montroy argues that the reasoning of *Blakely* and *Booker* is applicable here and supports his conclusion that his Sixth Amendment rights were violated. However, *Blakely* and *Booker* are implicated only when a sentencing court considers a "fact that increases the penalty for a crime *beyond the prescribed statutory maximum . . . .*" *Apprendi*, 530 U.S. at 490 (emphasis added). Here the court considered facts not found by the jury when considering the length of Montroy's *within* the statutory limits, not to increase those limits.

¶ 24. Montroy also argues that the distinction between the mandatory guidelines rejected in *Booker*

443

and Wisconsin's advisory guidelines is irrelevant because "the end result . . . is exactly the same." We are unpersuaded. As the *Booker* Court explained:

> If the [federal] Guidelines as currently written could be read as merely provisions that recommended, rather than required, the selection of particular sentences in response to differing sets of facts, their use would not implicate the Sixth Amendment. We have never doubted the authority of a judge to exercise broad discretion in imposing a sentence within a statutory range.

*Id.* at 750. Because the Court sentenced Montroy for crimes found by a jury within the statutory limits for those crimes, the Sixth Amendment is not implicated and Montroy's due process claim fails.

*By the Court.*—Judgments and order affirmed.